UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK BLEICHER, as Trustee for Laura Petrea Olsen Bleicher Revocable Trust,

Plaintiff,

v.

Case No. 12-13357
Honorable Patrick J. Duggan

CHASE BANK N.A. and ONEWEST BANK FBS,

Defendants.
_________________________________________/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND (2) GRANTING DEFENDANTS' MOTION TO DISMISS**

Presently before the Court are two motions in this lawsuit seeking to challenge the foreclosure of property located at 941 North Melborn in Dearborn, Michigan ("Property"). First is Defendants' motion to dismiss Plaintiff's complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 8, 2013. (ECF No. 8.) Second is Plaintiff's "Ex-Parte Motion to Amend/Correct Complaint Pursuant to Federal Rule of Civil Procedure 15(a)(2) and for Required Joinder of a Party Pursuant to Federal Rule of Civil Procedure 19", filed March 1, 2013 in response to Defendants' motion to dismiss. (ECF No. 10.) Defendants have filed a response to Plaintiff's motion. No other responsive pleadings have

been filed. The Court concludes that oral argument will not aid in its disposition of the motions and therefore dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court denies Plaintiff's motion, grants Defendants' motion, and dismisses this action with prejudice.

## I. Applicable Standards

### A. Motion to Amend

Plaintiff titles his motion as one brought pursuant to Federal Rule of Civil Procedure 15(a)(2), although he also refers to subsection (a)(1) within the pleading. Which subsection applies depends on when a plaintiff seeks leave to amend. Under Rule 15, if the pleading to be amended "is one to which a responsive pleading is required" the party may amend the "pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). For "all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Defendants' motion to dismiss is not a responsive pleading, *Winget v. JP Morgan Chase Bank, NA*, 537 F.3d 565, 574 (6th Cir. 2008), and Plaintiff filed his motion seeking leave to amend and proposed amended complaint within twenty-

one days after service of Defendants' Rule 12(b)(6) motion. Thus Plaintiff could have filed his amended complaint without first seeking leave of court. He did seek leave, however, and the Sixth Circuit Court of Appeals has held that in that instance a party waives its right to amend as a matter of course and invites the court to review the amendment.[1] *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 458 (2013) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) and *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010)).

Leave to amend is to be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, a district court may deny leave to amend a complaint if the amendment would be futile. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). The district court should consider motions to dismiss in light of proposed amendments to the complaint and determine whether the proposed amendments would cure the identified deficiencies. *Begala v. PNH Bank*, 214 F.3d 776, 674 (6th Cir. 2000).

**B. Motion to Dismiss**

[1]Even if the Court ignored the motion and Plaintiff filed the amended complaint as a matter of course, the result in this case would be the same for, as discussed *infra*, the amendment does not cure the deficiencies set forth in Defendants' motion to dismiss.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not

impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66). While the court's analysis generally is restricted to the factual allegations within the complaint, the court also may consider: (1) documents referenced in the pleadings that are central to the plaintiff's claims, (2) matters of which a court can properly take notice, (3) public documents, and (4) decisions of government agencies. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322-23, 127 S. Ct. 2499, 2509 (2007); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## II. Factual and Procedural Background

On or about March 20, 1995, Laura Bleicher ("Ms. Bleicher") received a loan in the amount of $80,000.00 from North American Financial Corporation to

purchase the Property from her son and daughter-in-law, Frederick Bleicher ("Mr. Bleicher") and Marjorie Bleicher, respectively. (*See* Def.'s Mot. Exs. 1, 3.) To secure the loan, Ms. Bleicher granted North American Financial Corporation a mortgage on the Property. (*Id*. Ex. 1.) On March 24, 1995, the mortgage was assigned to North American Mortgage Company. (*Id*. Ex. 2.) The assignment was recorded with the Wayne County Register of Deeds on April 28, 1995. (*Id*.)

According to a Quit-Claim Deed filed with the Wayne County Register of Deeds on April 6, 1995, Mr. Bleicher and his wife conveyed the Property to Ms. Bleicher on March 21, 1995. (*Id*. Ex. 3.) A Quit-Claim Deed attached to Plaintiff's proposed amended complaint reflects that, also on March 21, 1995, Ms. Bleicher conveyed the Property to Melborn Limited Partnership ("partnership" or "Melborn"). (Pl.'s Mot. to Amend Ex. A.) This Quit-Claim Deed was not recorded with the Wayne County Register of Deeds.[2] Mr. Bleicher and Mr. William Hu are the sole members of the partnership. (*Id*. Ex. B ¶ 16.)

In 2007, Ms. Bleicher passed away and Mr. Bleicher was appointed Trustee of her estate. (*Id*. ¶¶ 18, 19.) Inconsistent with the transactions above, Ms. Bleicher's Living Revocable Trust Agreement, executed on December 1, 1995 and again on October 31, 2000, states that the Property was transferred directly from

---

[2] *See* https://www.waynecountylandrecords.com.

the estate of Ms. Bleicher's husband to Melborn, reserving a life estate to Ms. Bleicher. (Def.'s Mot. Ex. 5 at 19.)

At some point in time, Chase Bank, N.A. ("Chase"), became the servicer of Ms. Bleicher's loan. (Compl. ¶ 13.) According to the complaint and proposed amended complaint, in 2007, Mr. Bleicher notified Chase of Ms. Bleicher's death. (*Id*. ¶ 15; Pl.'s Mot. Ex. B ¶ 18.) Mr. Bleicher allegedly made the payments due on the loan for five years after Ms. Bleicher's death, as he and Mr. Wu were residing at the Property. (Compl. ¶ 17; Pl.'s Mot. Ex. B ¶¶ 17, 20.) However, Mr. Bleicher eventually suffered economic hardship, causing him to request a loan modification from Chase. (Compl. ¶ 18; Pl.'s Mot. Ex. B. ¶ 22.) In the meantime, the mortgage was assigned to IndyMac Federal Bank, FBS (Def.'s Mot. Ex. 6), which OneWest Bank FSB ("OneWest") thereafter acquired in its capacity as IndyMac's receiver. The assignment of the mortgage to IndyMac was recorded with the Wayne County Register of Deeds on June 23, 2010. (*Id*.)

OneWest eventually initiated foreclosure proceedings with respect to the Property. The housing counselor notice required under Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3205a, was published in the Detroit Legal News on June 1, 2011. (Def.'s Mot. Ex. 7 at 3.) Notice of a foreclosure sale with respect to the Property was posted at the Property on October

8, 2011, and published in the Detroit Legal News for four consecutive weeks beginning September 26, 2011, in accordance with section 3208 of Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3208. (Def.'s Mot. Ex. 7 at 4, 5.) Mr. Bleicher was communicating with Chase about a loan modification during this period and, according to the complaint and proposed amended complaint, received applications and requests for documentation from Chase. (Compl. ¶¶ 20-22, 24-27; Pl.'s Mot. Ex. B ¶¶ 23-26, 28-31.) According to the complaint and proposed amended complaint, Mr. Bleicher completed and returned the numerous loan modification applications he received from Chase and provided Chase with all the information requested. (*Id*.)

Nevertheless, a sheriff's sale with respect to the Property was held on January 26, 2012, where the Property was sold to OneWest for $77,720.97.[3] (Def.'s Mot. Ex. 7 at 2.) The Sheriff's Deed was recorded with the Wayne County Register of Deeds on February 14, 2012. The Six month statutory redemption period for the Property expired on July 26, 2012, without redemption being made.

One day before the redemption period expired, Mr. Bleicher, as Trustee of his mother's estate, initiated this lawsuit in the Circuit Court for Wayne County,

---

[3]According to a Statement of Compliance completed by Nakia Robinson, an attorney for OneWest, Mr. Bleicher did not provide all of the financial documents necessary to assess eligibility for a loan modification. (Def.'s Mot Ex. 7 at 7 ¶ 8.)

Michigan. The complaint asserts *inter alia* that: "Plaintiff" did not receive a copy of any promissory note with respect to the March 20, 1995 mortgage loan (Compl. ¶ 8); the mortgage was securitized and assigned numerous times and is part of a pooling servicing agreement (*id*. ¶¶ 1-12); and "Plaintiff" did not receive notice of the sheriff's sale or a mediation meeting with a housing counselor. (*Id*. ¶¶ 30, 31.) Plaintiff's proposed amended complaint which seeks to add Melborn as a plaintiff in addition to Mr. Bleicher as Trustee of his mother's estate, asserts the same allegations. (*See* Pl.'s Mot. Ex. B.) The complaint and proposed amended complaint contain the following "counts": (I) violations of Michigan foreclosure laws; (II) breach of an agreement to provide a loan modification; (III) fraud in the inducement; (IV) quiet title; (V) slander of title; (VI) violations of Michigan Compiled Laws § 600.3205(c); (VII) promissory estoppel; (VIII) relief from sheriff sale and/or set aside foreclosure; and (IX) declaratory and injunctive relief.

On July 31, 2012, Defendants removed the complaint to federal court based on diversity jurisdiction. The parties thereafter stipulated to an extension of time for Defendants to respond to the complaint and then to a stay of the litigation pending settlement negotiations. (ECF Nos. 6, 7.) When no settlement could be reached, Defendants filed their pending motion to dismiss on February 8, 2013.

## III. The Parties' Arguments

In their motion to dismiss, Defendants argue that Mr. Bleicher lacks standing to bring this lawsuit because he (individually or as Trustee of his mother's estate) has no legal interest in the Property as it was transferred to Melborn upon Ms. Bleicher's death. Defendants further argue that Mr. Bleicher lacks any basis to state claims against Chase for its alleged failure to authorize him to assume Ms. Bleicher's loan or modify the loan. Lastly, Defendants argue that all of the claims in the complaint fail as a matter of law.

Apparently to cure the standing issue raised in Defendants' motion, Plaintiff filed the motion to amend the complaint to add Melborn as a plaintiff. Plaintiff contends that Melborn is a party that must be joined under Federal Rule of Civil Procedure 19. Defendants oppose the joinder of Melborn as a plaintiff, arguing that the certificate required under Michigan law to grant the partnership the capacity to sue has not been filed. Defendants also argue that the claims alleged are futile even when brought by Melborn and that Melborn is not a party that must be joined under Rule 19.

## IV. Applicable Law and Analysis

### A. Michigan's Relevant Foreclosure Law

Statutory law governs foreclosure sales by advertisement in Michigan, such as the sale of the subject Property. *Conlin v. Mortg. Elec. Registration Systems,*

*Inc.*, 714 F.3d 355 (6th Cir. 2013) (citations omitted); *see also Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993). "While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose, . . . it also controls the rights of both the mortgagee and the mortgagor once the sale is completed." *Conlin*, 714 F.3d at 359 (citations omitted). Pursuant to the statute, once a foreclosure sale has taken place, the mortgagor has six months to redeem the foreclosed property. Mich. Comp. Laws § 600.3240(8). If no redemption is made by the time the redemption period lapses, the mortgagor's "right, title, and interest in and to the property" are extinguished. *Id*. § 600.3236; *see also Conlin*, 2013 WL 1442263, at *2 (citing *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187, 4 N.W.2d 514, 517 (Mich. 1942)).

Michigan's foreclosure-by-advertisement scheme was designed to "impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties." *Conlin*, 714 F.3d at 359 (citations omitted). To effectuate the latter priority, the ability for a court to set aside a foreclosure sale is "drastically circumscribed." *Id*. (citing *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969) and *Senters*, 443 Mich. at 54, 503 N.W.2d at 643). Once the statutory redemption period has expired, a court may set aside a sheriff's sale only where the mortgagor makes "a clear showing of fraud, or

irregularity." *Id*. (citing *Schulthies*, 16 Mich. App. at 247-48, 167 N.W. at 49); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643). Notably, the purported fraud or irregularity must relate to the foreclosure process itself. *Conlin*, at 360 (citing *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49); *see also Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure proceeding may be challenged after a sale).

The redemption period expired with respect to the subject Property on July 26, 2012. The filing of this lawsuit one day earlier did not toll the redemption period. *See Conlin*, 714 F.3d at 360 (indicating that "the filing of a lawsuit is insufficient to toll the redemption period") (internal quotation marks and citation omitted). Thus "a clear showing of fraud, or irregularity" in the foreclosure proceeding is required to set aside the sheriff's sale or to present a valid defense to any action brought to evict Mr. Bleicher and/or Mr. Hu from the Property.

Neither the Complaint nor proposed amended complaint allege a single fact in support of the "strong case of fraud" required to set aside the foreclosure sale. In fact, the record shows that Defendants complied with Michigan's foreclosure by

advertisement statute. For the reasons outlined below, without a basis to set aside the foreclosure sale, Melborn has no standing to assert the claims raised in this action.[4]

Under Michigan law, Ms. Bleicher's transfer of the Property to Melborn had no impact on OneWest's lien on the Property pursuant to the Mortgage. *United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 497 (6th Cir. 1990) (citing *Bess*, 357 U.S. 51, 57, 78 S. Ct. 1054, 1058 (1990) (explaining that "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . .") (internal quotation marks and citation omitted)). Pursuant to that lien, OneWest had the power to sell the Property at a foreclosure sale in the event of an uncured default, which it did. OneWest purchased the Property at the sheriff's sale and the Sheriff's Deed reflecting the transaction subsequently was recorded in the chain of title. The purported conveyance to Melborn was not recorded and Plaintiff does not allege that OneWest otherwise was aware of the transfer. As such, OneWest was a bona fide

[4]As argued by Defendants, Mr. Bleicher, individually or as Trustee of Ms. Bleicher's estate, has no standing to raise the claims asserted because the conveyance to Melborn left Ms. Bleicher with only a life interest in the Property which extinguished upon her death.

purchaser of the Property and any prior interest of Melborn was voided upon the recording of OneWest's deed. *See* Mich. Comp. Laws § 565.29 ("Every conveyance in real estate within the state . . . which shall not be recorded . . . , shall be void as against any subsequent purchaser in good faith and for valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.").

Counts I, IV, V, VI, VIII, and IX of the complaint and proposed amended complaint therefore fail to state a claim upon which relief may be granted.

### B. Breach of Contract, Fraud in the Inducement, and Promissory Estoppel

Mr. Bleicher alleges that Chase's representatives informed him that if he supplied all the documentation requested to determine if he was eligible to receive a loan modification and he was eligible for a modification, the loan made to Ms. Bleicher would be modified. Plaintiff's breach of contract, fraud in the inducement, and promissory estoppel claims are premised on Chase's failure to modify the loan. Even if Mr. Bleicher had standing to assert these claims, they fail as a matter of law.

First, Michigan's statute of frauds precludes a party from bringing a claim– no matter its label– against a financial institution to enforce the terms of an oral promise to modify a loan. Mich. Comp. Laws § 566.132(2); *Goryoka v. Quicken*

*Loan, Inc.*, No. 11-2178, 2013 WL 1104991, at *2 (6th Cir. Mar. 18, 2013) (citing *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 619 N.W.2d 66, 72 (2000)). Second, neither Mr. Bleicher nor Melborn was a party to the mortgage and thus there is no basis for them to claim that they were entitled to a loan modification under Michigan law or the mortgage loan agreement.

Counts II, III, and VII thus also fail to state a claim upon which relief may be granted.

## V. Conclusion

For the reasons set forth above, the Court concludes that the claims alleged in the initial and proposed amended complaints fail to state a claim upon which relief may be granted.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion requesting leave to file an amended complaint is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' motion to dismiss is **GRANTED**.

Dated: July 12, 2013

s/Patrick J. Duggan
United States District Judge

Brian Dailey, Esq.
Justin G. Grove, Esq.
Joseph H. Hickey, Esq.
Kyle R. Dufrane, Esq.
Thomas H. Trapnell, Esq.